E-FILED
Saturday, 07 July, 2018  01:28:59 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | | |
|---|---|---|
| DAVID BROWN II, as Independent Administrator of the Estate of DAVID BROWN, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 18-CV-01168-JBM-JEH |
| MATT SMITH, the SHERIFF OF WOODFORD COUNTY, individually and in his official capacity; WOODFORD COUNTY, ILLINOIS; WILLIS SURRATT; GARY HARRIS; JOSEPH HITCHINS; TERRA SHAFFER; ADVANCED CORRECTIONAL HEALTHCARE, INC., an Illinois for-profit corporation; JASON SCOTT SO., D.O.; and ROBIN SIMPSON, R.N., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## SHERIFF MATT SMITH'S AND WOODFORD COUNTY'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants Matt Smith (Sheriff Smith) and Woodford County, Illinois (the "County") (collectively, Defendants), by their attorney, Bhairav Radia, for their answer and affirmative defenses to plaintiff's first amended complaint (Doc. # 14), state as follows:

1.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of the rights of Mr. Brown secured by the United States Constitution.

**ANSWER:   Defendants deny that Mr. Brown was deprived of his rights.**

2.     On April 27, 2017, Mr. Brown died in custody at the Woodford County

Jail, where he was incarcerated for driving on a suspended license. Defendants knew that Mr. Brown suffered from benign prostatic hyperplasia ("BPH") and needed to self-catheterize due to his inability to completely void urine. Prior to his death, Mr. Brown reported that he was unable to self-catheterize, complained of 10/10 flank pain, insisted that "something ain't right," and asked, over and over, to be taken to hospital. These complaints were accompanied by obvious, objective symptoms of a serious medical need. Indeed, Mr. Brown became so critically ill that he could no longer ambulate or stand, and collapsed on the floor. Instead of calling paramedics to take Mr. Brown to hospital, personnel at Woodford County Jail used a wheelchair to transport a barely responsive Mr. Brown to a holding cell, where he died of acute pyelonephritis secondary to obstructive uropathy and BPH. Mr. Brown's death was due to preventable causes, and would easily have been averted had defendants arranged for him to be transported to hospital. Advocate Eureka Hospital is located across the street from Woodford County Jail.

**ANSWER:**   **Defendants admit, on information and belief, that on April 27, 2017, Mr. Brown died in custody at the Woodford County Jail, where he was incarcerated for driving on a revoked or suspended license. Defendants admit, on information and belief, that Jail personnel did not call paramedics to take Mr. Brown to the hospital, but assert that they called the on-call doctor, defendant Dr. Jason So, by phone, and per Dr. So's instructions, moved Mr. Brown to a medical observation cell for better observation. Defendants admit, on information and belief, that Jail personnel used a wheelchair to transport Mr. Brown to the medical observation cell. Defendants admit, on information and belief, that in the opinion of the coroner's forensic pathologist, Mr. Brown's death was caused by acute pyelonephritis due to obstructive uropathy due to benign prostatic hypertrophy (BPH).**

**Defendants deny that they knew that Mr. Brown had BPH or had to use a catheter due to his inability to void urine. Defendants deny, on information and belief, that Mr. Brown was "barely" responsive when he was taken to the medical observation cell, and that Mr. Brown displayed "obvious, objective symptoms of a**

serious medical need."

Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 2.

PARTIES

3.    Plaintiff is the duly appointed independent administrator of Mr. Brown's estate under Case No. 18-P-00059 (Ill. Cir. Ct., Peoria Cnty.).

**ANSWER:    Admit, on information and belief.**

4.    Defendant Matt Smith is the Sheriff of Woodford County, Illinois, and is sued in his individual and official capacities.

**ANSWER:    Admit.**

5.    Defendant Woodford County, Illinois, is joined in this action pursuant to Carver v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003).

**ANSWER:    Admit.**

6.    Defendants Willis Surratt, Gary Harris, Joseph Hitchens, and Terra Shaffer (collectively the "individual deputies") are sworn Woodford County sheriff's deputies who were assigned to the Woodford County Jail. Each of the individual deputies were agents of defendant Matt Smith and defendant Woodford County, Illinois, and were acting within the scope of their agency, and under color of law, at all times mentioned herein. Each of the individual deputies are sued in their individual capacities.

**ANSWER:    Admit.**

7.    Defendant Advanced Correctional Healthcare, Inc. (hereafter, "ACH") is a for-profit corporation headquartered and doing business in this district that provides

healthcare services at Woodford County Jail on behalf of defendant Matt Smith and

defendant Woodford County. ACH is a final policy maker for Woodford County Jail. As

an agent of defendant Matt Smith and defendant Woodford County, ACH was at all

times acting under color of law by and through its lawful agents.

**ANSWER:** **Defendants admit, on information and belief, that ACH is an Illinois corporation that provides healthcare services to inmates at Woodford County Jail under its contract with Woodford County and the Woodford County Sheriff. Defendants admit that ACH determines policies and protocols concerning certain aspects of the Jail, specifically inmate medical care and treatment. Defendants deny the remaining allegations in paragraph 7.**

8.      Defendant Jason Scott So, D.O., (hereafter, "Dr. So") is a doctor of

osteopathic medicine who was an agent of ACH and was acting within the scope of his

agency with ACH and under color of law at all times mentioned herein. He is sued in

his individual capacity.

**ANSWER:** **Admit, on information and belief.**

9.      Defendant Robin Simpson, R.N., is a registered professional nurse who was

an agent of ACH and was acting within the scope of her agency with ACH and under

color of law at all times mentioned herein. She is sued in her individual capacity.

**ANSWER:** **Admit, on information and belief.**

**JURISDICTION & VENUE**

10.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343,

and 1367.

**ANSWER:** **Defendants admits the Court has jurisdiction over this action.**

11.      Venue is proper under 28 U.S.C. § 1391(b) because one or more of the

defendants reside in this judicial district and all defendants are residents of Illinois.

Further, a substantial part of the events and omissions giving rise to this claim occurred

within this judicial district.

**ANSWER:**   **Defendants admits that venue is proper.**

**FACTS AND CLAIM FOR RELIEF**

12.      On April 12, 2017, Mr. Brown appeared at the Woodford County

Courthouse in Eureka, Illinois, on a traffic ticket for driving on a suspended license. The

judge sentenced Mr. Brown to serve 240 days in custody, and Mr. Brown was taken

immediately to Woodford County Jail.

**ANSWER:**   **Admit, on information and belief.**

13.      Upon arrival at Woodford County Jail, Mr. Brown was noted to have

normal eye contact, mood, affect, intellectual functioning, and appearance. Mr. Brown

reported to jail personnel that he had kidney and prostate issues.   Mr. Brown informed

the jail's personnel that he was taking various prescription medications for these health

issues, and that he had been prescribed catheters to use at home because he was unable to

completely void. Mr. Brown requested to be seen by the jail's medical personnel.

**ANSWER:**   **Defendants admit, on information and belief, that upon Mr. Brown's arrival at Woodford County Jail, a correctional officer documented during the intake process that Mr. Brown had no difficulties with eye contact, mood, affect, intellectual functioning, and appearance. Defendants admit, on information and belief, that Mr. Brown reported to the officer conducting the intake process that he had heart, kidney and prostate issues; and that he was taking various prescription medications for these health issues.**

**Defendants deny, on information and belief, the remaining allegations in paragraph 13.**

14.      On April 14, 2017, defendant Robin Simpson examined Mr. Brown and

noted his past medical history, and current medical problems, including his need to catheterize himself in order to void urine. On that date, defendant Robin Simpson recorded that Mr. Brown was only "urinating small amounts" and that he was unable to empty his bladder.

**ANSWER:   Defendants admit, on information and belief, that on April 14, 2017, defendant Simpson examined Mr. Brown and noted his past medical history and current medical problems, and Mr. Brown reported that he used catheters at home, that he was only "urinating small amounts" and that he was not emptying his bladder. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 14.**

15.      On April 19, 2017, Mr. Brown reported to defendant Robin Simpson that he was experiencing 10/10 flank pain. Mr. Brown further reported that he was urinating as many as 11 times a day, but could only urinate small amounts, and was unable to completely void.

**ANSWER:   Defendants admit, on information and belief, that on April 19, 2017 Mr. Brown reported to defendant Simpson that he was experiencing pain and urinating small amounts frequently, up to about 11 times a day. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 15.**

16.      On April 24, 2017, a correctional officer wrote a note to defendant Robin Simpson informing her that "David Brown has not been able to `cath' himself for `two days' now" and that she "may want to follow up."

**ANSWER:   Defendants admit, on information and belief, the allegations in paragraph 17, and add that the officer also wrote in the note that Mr. Brown "refused help from us on 4/24/17 @ 2000."**

17.      On April 25, 2017, a correctional officer filled out a sick call request form directed to defendant ACH and its personnel, including defendant Robin Simpson, and Dr. So, asking them to "please follow up with Brown regarding ... catheter problems."

**ANSWER:**    Defendants admit, on information and belief, that on April 25, 2017, a correctional officer filled out a sick call request form directed to the nurse (defendant Robin Simpson) asking her to "please follow up with Brown regarding constipation and catheter problems." Defendants deny the remaining allegations in paragraph 17.

18.        Instead of seeking to determine why Mr. Brown was unable to self-catheterize, and evaluating the status of his medical needs, defendant Dr. So instructed the correctional officers, "If Brown refuses to use his catheter, we are to [discontinue his catheters]." Thus, instead of providing medical care to Mr. Brown to address his medical needs, ACH's Dr. So thought it prudent to withdraw care.

**ANSWER:** Defendants admit, on information and belief, that on April 25, 2017, Dr. So instructed the officer, among other things, that "If Brown refuses to use his catheter, we are to [discontinue]."
**Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 18.**

19.        From the beginning of Mr. Brown's incarceration on April 12, 2017, to and including April 25, 2017, Mr. Brown's health and well being had severely deteriorated, and he was displaying obvious symptoms of a serious medical need, and worrying changes in his mood, affect, appearance, and behavior. This included the fact that Mr. Brown was not eating or ambulating and was suffering from nausea and was vomiting day and night. It would have been obvious to anyone, including individuals with no medical training, that Mr. Brown's serious medical needs were not being met by ACH and its personnel, and that he needed to be promptly transported to a hospital for proper evaluation of a serious medical need.

**ANSWER:**    Defendants deny any allegations asserted against them in paragraph 19. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 19.

20.        On April 26, 2017, defendant Robin Simpson noted that Mr. Brown was unable to catheterize himself. Defendant Robin Simpson was aware that Mr. Brown was

unable to completely void his bladder, and that this condition had existed for a number of

days. Due to changes in Mr. Brown's affect, he was "mumbling" in his communications,

and could only explain that he was unable to catheterize himself because "something ain't

right." Mr. Brown told defendant Robin Simpson multiple times that he "want[ed] to go to

the hospital."

**ANSWER:     Defendants admit, on information and belief, that on April 26, 2017
defendant Simpson noted that Mr. Brown reported that he had not catheterized
himself for a number of days, that Mr. Brown was "mumbling"and said "something
ain't right" and requested to be sent to the hospital for two weeks. Defendants lack
knowledge or information sufficient to form a belief about the truth of the
remaining allegations in paragraph 20.**

21.     Defendant Robin Simpson refused to send Mr. Brown to hospital, and

instead caused him to be returned to his cell. On information and belief, defendant Robin

Simpson communicated with defendant Dr. So and he ratified her decision not to send

Mr. Brown to a hospital despite him knowing of Mr. Brown's critically ill status, evincing a

deliberate indifference to Mr. Brown's serious medical needs.

**ANSWER:     Defendants admit, on information and belief, that defendant Simpson
communicated with defendant Dr. So on April 26, 2017, and they did not send Mr.
Brown to the hospital. Defendants lack knowledge or information sufficient to form
a belief about the truth of the remaining allegations in paragraph 21, including
which of these defendants took the decision not to send Mr. Brown to the hospital.**

22.     On April 27, 2017, Mr. Brown attempted to get out of his bed and fell to the

floor shortly thereafter because his condition had deteriorated so significantly that he

could no longer stand. This incident is recorded on surveillance video, which was

available and accessible to the defendant correctional officers and ACH's personnel.

**ANSWER:     Defendants admit, on information and belief, that on April 27, 2017, Mr.
Brown wound up on the floor of his cell, and this incident is recorded on surveillance**

**video, which was available and accessible to the defendant correctional officers. Defendants deny, on information and belief, plaintiff's characterization of what the video shows. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 22.**

23.     When Mr. Brown fell, inmates came to his aid, and requested the assistance of the individual defendant correctional officers. Each of the individual deputies observed Mr. Brown's condition and would have known that Mr. Brown 1) was critically ill, 2) had a serious medical need that was not being met by ACH, and 3) needed to be hospitalized. Despite this, each of the individual deputies ignored Mr. Brown's serious medical needs and failed to arrange for his transportation to a hospital to receive proper medical attention.

**ANSWER:   Defendants admit, on information and belief, that inmates came to Mr. Brown's aid and requested the assistance of correctional officers. Defendants admit, on information and belief, that the individual deputies observed Mr. Brown's condition. Defendants admit Mr. Brown was not sent to the hospital. Defendants deny, on information and belief, the remaining allegations in paragraph 23.**

24.     Instead of calling emergency medical services, on April 27, 2017, one or more of the individual deputies called defendant Dr. So, who instructed them that he "will be here Friday" and to move Mr. Brown "to [a] medical [observation cell] for better observation."

**ANSWER:   Admit, on information and belief.**

25.     The "medical observation cell" is simply another jail cell, and moving an inmate to that cell does not improve an inmate's access to nurses, physicians, or any other medical care; nor does it constitute the provision of medical care.

**ANSWER:   Denied, on information and belief.**

26.     Defendants Willis Surrat and Gary Harris transported Mr. Brown from his cell into the observation cell by using a wheelchair. Mr. Brown was so weak by this point in time that defendants Willis Surrat and Gary Harris had to physically extract and lift Mr. Brown from the wheelchair into the observation cell's bed. Mr. Brown was barely responsive, and his body almost struck the cell wall as defendants Willis Surrat and Gary Harris lifted him out of the chair.

**ANSWER:    Defendants admit, on information and belief, that Willis Surratt and Gary Harris transported Mr. Brown from his cell into the observation cell by using a wheelchair. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 26.**

27.     Despite being in the "observation" cell, the individual deputies failed to properly monitor Mr. Brown. At one point in time, defendant Willis Surratt served Mr. Brown dinner by placing it on a tray at the door of the cell. After the dinner tray and a glass of water went untouched for a period of time, defendant Willis Surratt removed them from the cell door.

**ANSWER:    Defendants deny, on information and belief, that the individual deputies failed to properly monitor Mr. Brown after he was moved to the medical observation cell. Defendants admit, on information and belief, the remaining allegations in paragraph 27 but deny the alleged sequence, characterization, and implication because of the omission of context and other facts.**

28.     Later the same day, defendant Willis Surratt came entered the cell to check on Mr. Brown. By now, Mr. Brown had been deceased for some period of time. Only after finding Mr. Brown completely unresponsive and dead did the individual deputies finally contact emergency medical services. Efforts at resuscitating Mr. Brown failed.

**ANSWER:    Defendants admit, on information and belief, that when Deputy Surratt entered the cell to check on Mr. Brown, he found Mr. Brown unresponsive,**

**emergency medical services were summoned, and efforts at resuscitating Mr. Brown failed. Defendants lack knowledge or information sufficient form a belief about the time of Mr. Brown's death. Defendants deny, on information and belief, the remaining allegations in paragraph 28.**

29.     An autopsy performed on Mr. Brown revealed that he died of eminently

preventable causes. The etiologically specific cause of death was acute pylenophritis due

to obstructive uropathy due to BPH. Had any of the defendants not been deliberately

indifferent to Mr. Brown's serious medical needs, and arranged for him to be transported

to hospital, he would have received appropriate medical treatment, and would not have

died a preventable death.

**ANSWER:    Defendants admit, on information and belief, that the coroner's forensic pathologist opined and concluded that Mr. Brown's death was caused by acute pyelonephritis due to obstructive uropathy due to benign prostatic hypertrophy (BPH). Defendants deny that they were deliberately indifferent to Mr. Brown's serious medical needs. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 29.**

30.     As a result of the unjustified and unconstitutional conduct of each of the

defendants, Mr. Brown experienced pain, suffering, emotional distress, injury, and

ultimately death. Each of the defendants acted intentionally, with malice, willfulness,

and deliberate indifference to the rights of Mr. Brown, and violated Mr. Brown's

constitutional rights by willfully ignoring his serious medical needs.

**ANSWER:    Defendants deny the allegations asserted against them in paragraph 30. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 30.**

31.     Mr. Brown is survived by plaintiff. As a direct and proximate result of

defendants' unlawful conduct, plaintiff has experienced and will continue to experience

into the future pecuniary loss, including a loss of society, and grief, sorrow, and mental suffering.

**ANSWER:    Admit, on information and belief, that Mr. Brown is survived by plaintiff. Defendants deny the allegations asserted against them in paragraph 31. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 31.**

32.    The unconstitutional official policies and/or widespread practices maintained by defendants Matt Smith, Woodford County, and ACH, as further described below, were each moving forces behind the unconstitutional treatment and ultimate death of Mr. Brown.

**ANSWER:    Denied.**

33.    As of March and April, 2017, there existed a widespread practice and/or official policy at Woodford County Jail, maintained with deliberate indifference to the constitutional rights of inmates, such as Mr. Brown, of not securing immediate medical attention for inmates who display obvious signs of a serious medical need that poses an immediate risk to the health or safety of the inmate. Instead, it was a widespread practice and/or official policy at Woodford County Jail to defer any and all decisions regarding inmate medical issues to defendant ACH even though it was known to defendant Matt Smith and defendant Woodford County that ACH systematically denies medical care to inmates in order to maximize its profits, as further alleged below. More specifically, it was a widespread practice and/or official policy at Woodford County Jail to not contact emergency medical services on behalf of an inmate who is experiencing an obvious medical emergency without the prior approval of ACH, even where such approval was

wrongfully withheld or denied.

**ANSWER:   Defendants admit that it was the Jail's policy and practice to rely on the professional judgment and medical decisions made by ACH's medical providers regarding most inmate medical issues. Defendants deny the remaining allegations in paragraph 33.**

34.     The above-referenced widespread unconstitutional practices are allowed to flourish because defendant Matt Smith as Sheriff, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control his deputies, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Mr. Brown. For example, defendant Matt Smith, and defendant Woodford County, ratified the unconstitutional treatment of Mr. Brown by finding that all of the individual deputies acted in accordance with Woodford County policies. In this way, defendant Matt Smith violated Mr. Brown's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

**ANSWER:   Defendants admit that there was a finding by the Woodford County Sheriff's Department that all of the individual deputies acted in accordance with department policy and medical protocol. Defendants deny the remaining allegations in paragraph 34.**

35.     The above-described widespread practices, so well settled as to constitute de facto policy of Woodford County, were able to exist and thrive because governmental policymakers with authority over the same, namely, defendant Matt Smith, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:   Denied.**

36.     As of March and April 2017, defendant ACH had established and

maintained a policy, de facto policy, or custom of routinely and systematically denying

necessary medical treatment to inmates at facilities where it was contracted to provide

medical care. This policy, de facto policy, or custom included refusing to summon

emergency medical services for inmates like Mr. Brown who are clearly experiencing a

medical emergency. It is common at jails where ACH provides medical services to

observe inmates with clear symptoms of serious medical illness, injury, or conditions who

frequently ask for medical care or to see a doctor, whose requests are routinely delayed

or completely ignored by medical personnel. Further, it is common at jails where ACH

provides medical services for ACH to unjustifiably and unconstitutionally withhold

access to hospital care where it is required for the inmate's health and wellbeing.

**ANSWER:   The allegations in paragraph 36 are not asserted against Defendants so they do not answer. To the extent the allegations are asserted against Defendants, they lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 36.**

37.    This widespread practice is allowed to flourish because defendant ACH,

which directs the provision of health care services at Woodford County Jail, directly

encourages and is thereby the moving force behind the very type of misconduct at issue

by failing to adequately train and supervise medical personnel and sheriff deputies at

Woodford County Jail and other facilities where ACH is contracted to provide medical

care, and by failing to adequately punish and discipline prior instances of similar

misconduct, thus directly encouraging future abuses such as those affecting Mr. Brown.

In this way, ACH violated Mr. Brown's rights by maintaining policies and practices that

were the moving force driving the foregoing constitutional violations.

**ANSWER:    Denied, on information and belief.**

38.    The above-described widespread practice, so well settled as to constitute de facto policy at Woodford County Jail, was able to exist and thrive because governmental policymakers with authority over the same, namely, defendant ACH, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:    Denied, on information and belief.**

39.    Defendant ACH's policy, de facto policy, or custom of routinely and systematically denying necessary medical treatment to inmates at facilities where it was contracted to provide medical care in order to maximize its profits is so widespread that it has attracted national media attention. More specifically, a CBS News investigation documented numerous instances of inmates dying from needless, preventable deaths, in several facilities that contracted with ACH, as a result of ACH's refusal to provide medical care and refusal to provide transportation to hospital to inmates who are critically ill. The actions and inactions of Defendant Robin Smith and defendant Dr. So as alleged herein were in furtherance of ACH's policy, practice, or custom.

**ANSWER:    The allegations in paragraph 39 are not asserted against Defendants so they do not answer. To the extent the allegations are asserted against Defendants, they lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39.**

40.    Defendants Willis Surratt, Gary Harris, Joseph Hitchins, Terra Shaffer, Dr. So, and Robin Simpson are each liable to plaintiff pursuant to 42 U.S.C. § 1983 based on their deliberate indifference to Mr. Brown's medical needs, and their failure to intervene.

**ANSWER:    Defendants deny the allegations asserted against them and on**

**information and belief, deny the allegations asserted against the individual deputies in paragraph 42. Defendants do not answer for any other defendant.**

41.     Defendants Matt Smith, Woodford County, and ACH are liable to plaintiff pursuant to 42 U.S.C. § 1983 and <u>Monell v. Dept. of Soc. Svcs.,</u> 436 U.S. 658 (1978), based on their unconstitutional policies, practices, and/or customs which were a moving force behind the constitutional deprivation suffered by Mr. Brown.

**<u>ANSWER</u>:   Denied.**

42.     Plaintiff additionally asserts Illinois state-law claims of willful and wanton negligence against defendants Willis Surratt, Gary Harris, Joseph Hitchins, and Terra Shaffer. Each of these defendants knew from their observation of conditions that Mr. Brown was in need of immediate medical care and, through willful and wanton conduct, failed to take reasonable action to summon emergency medical services or other proper medical care. Plaintiff asserts the same state-law claims against defendants Matt Smith and Woodford County under the doctrine of respondeat superior. Plaintiff additionally asserts a state-law indemnification claim against defendants Matt Smith and Woodford County pursuant to 745 ILCS 10/9-102.

**<u>ANSWER</u>:   Defendants admit plaintiff is asserting these state law claims, but deny the remaining allegations and deny any wrongdoing or liability.**

43.     Plaintiff additionally asserts Illinois state-law medical malpractice claims against defendants Dr. So and Robin Simpson in that they committed medical negligence by failing to cause Mr. Brown to be immediately transported to the nearest hospital, and their failure to do so proximately caused Mr. Brown's death. Plaintiff asserts the same state-law claims against defendant ACH under the doctrine of respondeat superior.

**ANSWER:   The allegations in paragraph 43 are not asserted against Defendants, so they do not answer.**

44.     Plaintiff's state-law claims are brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 <u>et seq.,</u> for the pecuniary losses sustained by Mr. Brown's next-of-kin, and the Illinois Survival statute, 755 ILCS 5/27-6, for Mr. Brown's conscious pain and suffering prior to death.

**ANSWER:   Defendants admit plaintiff has brought these claims but deny wrongdoing or liability.**

Finally, Defendants deny that plaintiff is entitled to any of the relief or damages he seeks in the first amended complaint.

## AFFIRMATIVE DEFENSES

**A.     Affirmative defenses to federal claims**

1.     Sheriff Matt Smith is a sheriff who performs discretionary functions. At all times material to the allegations in plaintiff's first amended complaint, a reasonable Sheriff objectively viewing the facts and circumstances that Sheriff Smith faced could have believed his actions to be lawful, in light of clearly established law and the information they possessed.   In other words, Sheriff Smith did not knowingly violate clearly established constitutional rights of which a reasonable person would have known.   Sheriff Smith, therefore, is entitled to qualified immunity as a matter of law on plaintiff's federal constitutional claims brought against him in his individual capacity.

2.     Sheriff Smith is not a medical provider or medical professional and does not provide medical advice, care, or treatment to inmates at the Woodford County Jail. Consequently, Sheriff Smith was entitled to rely on the professional judgment of trained

medical staff who examined or treated Mr. Brown during his detention in the Jail.

3.  Sheriff Smith relied on the professional judgment of ACH and its medical providers and staff with regard to formulating, adopting, or implementing the policies and procedures concerning inmate health care in the Woodford County Jail.

4.  Under 42 U.S.C. § 1983, punitive damages cannot be awarded against Woodford County, or against Sheriff Smith in his official capacity.

**B.  Affirmative defenses to state law claims**

**I.  Immunities under the Tort Immunity Act**

Woodford County is a local public entity. Sheriff Smith and the individual deputies are public employees and they acted within the scope of their employment at all relevant times during Mr. Brown's detention in the Woodford County Jail in April 2017. Accordingly, Defendants are entitled to the following immunities under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1 et seq.

1.  Plaintiff alleges Mr. Brown died as a result of the acts or omissions of corrections officers employed by the Defendants. Defendants are not liable for death or injury resulting from an act or omission of their employee where the employee is not liable. 745 ILCS 10/2-109.

2.  Sheriff Smith is not liable for Mr. Brown's death or alleged injuries caused by the act or omission of another person. 745 ILCS 10/2-204.

3.  Sheriff Smith serves in a position involving the determination of Jail policies and procedures. As such, he cannot be liable for death or injury resulting from

any discretionary act or omission in determining Jail policies or procedures, as alleged, even if he abused his discretion. 745 ILCS 10/2-201.

4.      Defendants cannot be liable for Sheriff Smith's alleged failure to train, supervise, or control his corrections officers or employees. 745 ILCS 10/4-103.

5.      Plaintiff alleges the individual deputies failed to monitor Mr. Brown after he was moved to the medical observation cell on April 27, 2017. Defendants cannot be liable for an injury caused by the failure of any corrections officer to monitor Mr. Brown in the Jail on that day or any other day. 745 ILCS 10/4-103.

6.      Defendants cannot be liable for Mr. Brown's death or injuries allegedly caused by the individual deputies' alleged failure to summon emergency services or arrange for Mr. Brown's transportation to a hospital on April 27, 2017. On information and belief, the individual deputies did not know from their observation of conditions that Mr. Brown was in need of emergency medical services or immediate hospitalization. In addition, the individual deputies immediately summoned medical care for Mr. Brown by calling Dr. So and apprising him about Mr. Brown's condition. Thereafter, the individual deputies relied upon the professional judgment of the doctor and followed the doctor's instructions. Consequently, the individual deputies acted reasonably during the relevant time, and their conduct was not willful and wanton. 745 ILCS 10/4-105.

7.      Defendants cannot be liable for Mr. Brown's death or injuries caused by any of correctional officer's alleged failure to make an adequate physical examination of Mr. Brown for the purpose of determining whether he had a physical condition or was

allegedly displaying "obvious symptoms of a serious medical need" that would constitute a hazard to his health and safety in the Woodford County Jail and that would require emergency medical services or hospitalization. 745 ILCS 10/6-105.

8.      Defendants cannot be liable for Mr. Brown's death or injuries caused by any correctional officer's alleged failure to diagnose Mr. Brown's physical illness or his "serious medical need." 745 ILCS 10/6-106.

9.      Corrections officers documented and passed on information concerning Mr. Brown's condition and medical issues during his detention in the Jail in April 2017. Defendants cannot be liable for any misrepresentation of its employees, whether or not such misrepresentation is negligent or intentional. 745 ILCS 10/2-106. Defendants also cannot be liable for any injury caused by any negligent misrepresentation or the provision of information, orally or in writing, by their employees. 745 ILCS 10/2-107.

## II.      Contributory negligence

1.      Defendants deny any liability to plaintiff. In the alternative, if Defendants are any of their employees are held liable, plaintiff's recovery should be reduced by Mr. Brown's contributory negligence.

2.      At the times and places alleged in the first amended complaint, Mr. Brown owed a duty of ordinary care for his own health and welfare.

3.      On information and belief, Mr. Brown violated his duty of ordinary care by committing one or more of the following negligent acts or omissions:

(a) failed to accurately report his symptoms and conditions to correctional officers and/or medical staff;

(b) failed to fully and accurately report his medical history to correctional officers and/or medical staff;

(c) failed to follow medical directives and orders given by defendants Robin Simpson and Dr. So and other medical providers;

(d) failed to take medications or comply with medication regimens prescribed for him;

(e) failed to use catheters provided by medical staff and/or correctional officers; and

(f) refused medical assistance offered by medical staff and/or correctional officers, including assistance with catheterization.

4.      One or more of the foregoing acts, omissions or violations of Illinois law was a proximate cause or the proximate cause of Mr. Brown's injuries and death and plaintiff's claimed injuries.

5.      Illinois law provides that "In all actions on account of bodily injury or death …, based on negligence …, the plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought. The plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff." 735 ILCS 5/2-1116.

6.       Under 735 ILCS 5/2-1116, plaintiff's recovery must be barred or reduced by Mr. Brown's comparative fault.

For these reasons, Defendants respectfully pray that the Court enter an Order barring plaintiff's recovery if Mr. Brown is found to be more than 50% at fault or reducing plaintiff's recovery by Mr. Brown's comparative fault if such fault is 50% or less of the total combined fault, and award Defendants their costs herein.

## III.    Failure to mitigate damages

1.       At the times and places alleged in the first amended complaint, Mr. Brown had a duty to take reasonable measures to mitigate his damages. Despite this duty, Mr. Brown failed to mitigate his damages in the following ways:

(a) failed to accurately report his symptoms and conditions to correctional officers and/or medical staff;

(b) failed to fully and accurately report his medical history to correctional officers and/or medical staff;

(c) failed to follow medical directives and orders given by defendants Robin Simpson and Dr. So and other medical providers;

(d) failed to take medications or comply with medication regimens prescribed for him;

(e) failed to use catheters provided by medical staff and/or correctional officers; and

(f) refused medical assistance offered by medical staff and/or correctional officers, including assistance with catheterization.

2.      Plaintiff is not entitled to recover for any damages that could have been mitigated by Mr. Brown by taking reasonable measures on his part.

For these reasons, Defendants pray that this Court enter judgment in bar of plaintiff's first amended complaint, or in the alternative, deny plaintiff the elements of damages that Mr. Brown could have been mitigated; award Defendants attorneys' fees and costs at plaintiff's expense; and additional relief as the Court deems just.

## JURY DEMAND

Defendants request a jury trial.

Respectfully submitted,

**SHERIFF MATT SMITH and WOODFORD COUNTY,**

By:  *s/Bhairav Radia* _____

Bhairav Radia, #6293600
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone:   (847) 291-0200
Fax: (847) 291-9230
Email: bradia@okgc.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| DAVID BROWN II, as Independent<br>Administrator of the Estate of DAVID<br>BROWN, deceased,<br><br>       Plaintiff,<br><br>   v.<br><br>MATT SMITH, the SHERIFF OF WOODFORD<br>COUNTY, individually and in his official<br>Capacity, et al.,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 18-CV-01168 |

## CERTIFICATE OF SERVICE

       I hereby certify that on July 7, 2018, I electronically filed *Sheriff Smith's and Woodford County's Answer to Plaintiff's First Amended Complaint* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following registered CM/ECF participant(s):

John K. Kennedy
Daniel Watkins
James D. Montgomery & Associates, Ltd.
jkennedy@jdmlaw.com
dwatkins@jdmlaw.com

Peter R. Jennetten
Quinn, Johnston, Henderson, Pretorius, and Cerullo
pjennetten@quinnjohnston.com

                   By:   *s/Bhairav Radia*
                           Bhairav Radia, #6293600
                           O'Halloran, Kosoff, Geitner & Cook, LLC
                           650 Dundee Road, Suite 475
                           Northbrook, Illinois 60062
                           Telephone:   (847) 291-0200
                           Fax: (847) 291-9230
                           E-mail:  bradia@okgc.com