E-FILED
Friday, 27 July, 2018  06:35:03 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| DAVID BROWN II, as Independent Administrator of the Estate of DAVID BROWN, deceased,<br>      Plaintiff,<br><br>    v.<br><br>MATT SMITH, the SHERIFF OF WOODFORD COUNTY, individually and in his official capacity; WOODFORD COUNTY, ILLINOIS; WILLIS SURRATT; GARY HARRIS; JOSEPH HITCHINS; TERRA SHAFFER; DARIN HOUSEHOLTER; DOUG FLETCHER; DANIEL THOMPSON; COURTNEY SOTO; KYLE DURST; JIM ELLIOTT; ROBERT PLOPPER; SHANE AMIGONI; JOE SOTO; CHAD PYLES; KELSEY KOWALSKI; ADVANCED CORRECTIONAL HEALTHCARE, INC., an Illinois for-profit corporation; JASON SCOTT SO, D.O.; and ROBIN SIMPSON, R.N.,<br>      Defendants. | Case No.  18-cv-01168-JBM-JEH<br><br><br><br><br><br>JURY DEMANDED |

## SECOND AMENDED COMPLAINT

Plaintiff David Brown, II (hereafter, "Plaintiff"), as Independent

Administrator of the Estate of his deceased father, David Brown, I (hereafter, "Mr.

Brown"), by counsel John K. Kennedy and Daniel Watkins, II, alleges as follows:

## INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of the rights of Mr. Brown secured by the United States Constitution.

2.      On April 27, 2017, Mr. Brown died in custody at the Woodford County Jail, where he was incarcerated for driving on a suspended license.  Defendants knew that Mr. Brown suffered from benign prostatic hyperplasia ("BPH") and needed to self-catheterize due to his inability to completely void urine.  Prior to his death, Mr. Brown reported that he could not use his catheters, complained of 10/10 flank pain, insisted that "something ain't right," and asked, over and over, to be taken to hospital.  These complaints were accompanied by obvious, objective symptoms of a serious medical need.  Indeed, Mr. Brown became so critically ill that he could no longer ambulate or stand, and collapsed on the floor.  Instead of calling paramedics to take Mr. Brown to hospital, personnel at Woodford County Jail used a wheelchair to transport a barely responsive Mr. Brown to a holding cell, where he died of acute pyelonephritis secondary to obstructive uropathy and BPH.  Mr. Brown's death was due to preventable causes, and would easily have been averted had defendants arranged for him to be transported to hospital.  Advocate Eureka Hospital is located across the street from Woodford County Jail.

## PARTIES

3.      Plaintiff is the duly appointed independent administrator of Mr. Brown's estate under Case No. 18-P-00059 (Ill. Cir. Ct., Peoria Cnty.).

4.     Defendant Matt Smith is the Sheriff of Woodford County, Illinois, and is sued in his individual and official capacities.

5.     Defendant Woodford County, Illinois, is joined in this action pursuant to Carver v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003).

6.     Defendants Willis Surratt, Gary Harris, Joseph Hitchens, Terra Shaffer, Darin Householter, Doug Fletcher, Daniel Thompson, Courtney Soto, Kyle Durst, Jim Elliott, Robert Plopper, Shane Amigoni, Joe Soto, Chad Pyles, and Kelsey Kowalski (collectively the "individual deputies") are sworn Woodford County sheriff's deputies who were assigned to the Woodford County Jail.  Each of the individual deputies were agents of defendant Matt Smith and defendant Woodford County, Illinois, and were acting within the scope of their agency, and under color of law, at all times mentioned herein.  Each of the individual deputies is sued in his or her individual capacity.

7.     Defendant Advanced Correctional Healthcare, Inc. (hereafter, "ACH") is a for-profit corporation headquartered and doing business in this district that provides healthcare services at Woodford County Jail on behalf of defendant Matt Smith and defendant Woodford County.  ACH is a final policy maker for Woodford County Jail.  As agent of defendant Matt Smith and defendant Woodford County, ACH was at all times acting under color of law by and through its lawful agents.

8.     Defendant Jason Scott So, D.O., (hereafter, "Dr. So") is a doctor of osteopathic medicine who was an agent of ACH and was acting within the scope of

his agency with ACH and under color of law at all times mentioned herein.  He is sued in his individual capacity.

9.      Defendant Robin Simpson, R.N., is a registered professional nurse who was an agent of ACH and was acting within the scope of her agency with ACH and under color of law at all times mentioned herein.  She is sued in her individual capacity.

## JURISDICTION & VENUE

10.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

11.      Venue is proper under 28 U.S.C. § 1391(b) because one or more of the defendants reside in this judicial district and all defendants are residents of Illinois. Further, a substantial part of the events and omissions giving rise to this claim occurred within this judicial district.

## FACTS AND CLAIM FOR RELIEF

12.      On April 12, 2017, Mr. Brown appeared at the Woodford County Courthouse in Eureka, Illinois, on a traffic ticket for driving on a suspended license. The judge sentenced Mr. Brown to serve 240 days in custody, and Mr. Brown was taken immediately to Woodford County Jail.

13.      Upon arrival at Woodford County Jail, Mr. Brown was noted to have normal eye contact, mood, affect, intellectual functioning, and appearance.  Mr. Brown reported to jail personnel that he had kidney and prostate issues, was taking various prescription medications for these health issues, and had been prescribed

4

catheters to use at home because he was unable to completely void.  Mr. Brown
requested to be seen by the jail's medical personnel.

14.    On April 14, 2017, defendant Robin Simpson examined Mr. Brown and
noted his past medical history, and current medical problems, including his need to
catheterize himself in order to void urine.  On that date, defendant Robin Simpson
recorded that Mr. Brown was only "urinating small amounts" and that he was
unable to empty his bladder.

15.    On April 19, 2017, Mr. Brown reported to defendant Robin Simpson
that he was experiencing 10/10 flank pain.  Mr. Brown further reported that he was
urinating as many as 11 times a day, but could only urinate small amounts, and
was unable to completely void.

16.    On April 24, 2017, a correctional officer wrote a note to defendant
Robin Simpson informing her that "David Brown has not been able to 'cath' himself
for 'two days' now" and that she "may want to follow up."

17.    On April 25, 2017, a correctional officer filled out a sick call request
form directed to defendant ACH and its personnel, including defendant Robin
Simpson and Dr. So, asking ACH to "please follow up with Brown regarding …
catheter problems."

18.    Instead of seeking to determine why Mr. Brown was unable to self-
catheterize or evaluating the status of his medical needs, defendant Dr. So
instructed the jail guards, "If Brown refuses to use his catheter, we are to

[discontinue his catheters]."  Thus, instead of providing medical care to Mr. Brown to address his medical needs, ACH's Dr. So thought it prudent to withdraw care.

19.    From the beginning of Mr. Brown's incarceration on April 12, 2017, to and including April 25, 2017, Mr. Brown's health and well being had severely deteriorated.  By April 25, 2017, Mr. Brown was displaying obvious symptoms of a serious medical need, and worrying changes in his mood, affect, appearance, and behavior.  This included the fact that Mr. Brown was not eating or urinating, and was vomiting day and night.  It would have been obvious to anyone, including individuals with no medical training, that Mr. Brown's serious medical needs were not being met by ACH and its personnel, and that he needed to be promptly transported to a hospital for proper evaluation of a serious medical need.

20.    On April 26, 2017, defendant Robin Simpson noted that Mr. Brown was unable to catheterize himself.  Defendant Robin Simpson was aware that Mr. Brown was unable to empty his bladder, and that this condition had existed for a number of days.  Due to changes in Mr. Brown's affect, he was "mumbling" in his communications, and could only explain that he was unable to catheterize himself because "something ain't right."  Mr. Brown told defendant Robin Simpson multiple times that he "want[ed] to go to the hospital."

21.    Defendant Robin Simpson acted with deliberate indifference to Mr. Brown's serious medical needs in that she knew that he was critically ill, but refused to send him to hospital and instead caused him to be returned to his cell. On information and belief, defendant Robin Simpson communicated with defendant

Dr. So and he ratified her decision not to send Mr. Brown to a hospital despite him knowing of Mr. Brown's critically ill status, thereby also evincing a deliberate indifference to Mr. Brown's serious medical needs.

22.     On April 27, 2017, Mr. Brown attempted to get out of his bed and fell to the floor shortly thereafter because his condition had deteriorated so significantly that he could no longer stand.  This incident is recorded on surveillance video, which was available and accessible to defendants.

23.     When Mr. Brown fell, inmates came to his aid, and requested the assistance of the jail guards.  Defendants Willis Surratt, Gary Harris, Joseph Hitchins, and Terra Shaffer, were working from 6:00 a.m. to 6:00 p.m. on April 26, 2017, and April 27, 2017.  Each of these defendants observed Mr. Brown's condition and would have known that Mr. Brown 1) was critically ill, 2) had a serious medical need that was not being met by ACH, and 3) needed to be hospitalized.  Despite this, each of the individual deputies named in this paragraph ignored Mr. Brown's serious medical needs and failed to arrange for his transportation to a hospital to receive proper medical attention.

24.     Instead of calling emergency medical services, on April 27, 2017, one or more of the individual deputies called defendant Dr. So, who instructed them that he "will be here Friday" and to move Mr. Brown "to [a] medical [observation cell] for better observation."

25.     The "medical observation cell" is another jail cell.  Relocating an inmate to the observation cell does not improve the inmate's wellbeing or access to nurses or physicians, nor does it constitute the provision of medical care.

26.     Defendants Willis Surrat and Gary Harris transported Mr. Brown from his cell into the observation cell by using a wheelchair.  Mr. Brown was so weak by this point in time that defendants Willis Surrat and Gary Harris had to physically extract and lift Mr. Brown from the wheelchair into the observation cell's bed.  Mr. Brown was barely responsive, and his body almost struck the cell wall as defendants Willis Surrat and Gary Harris lifted him out of the chair.

27.     Despite being in the "observation" cell, the individual deputies failed to properly monitor Mr. Brown.  At one point, defendant Willis Surratt served Mr. Brown dinner by placing it on a tray at the door of the cell, along with a glass of water.  Mr. Brown was unable to leave the bed due to his critical illness.  After some interval of time, defendant Willis Surratt removed the untouched dinner and water from the cell door without evaluating Mr. Brown's condition.

28.     Sometime later, defendant Willis Surratt entered the cell to check on Mr. Brown.  By now, Mr. Brown had been completely unresponsive and unconscious for some period of time.  Only after finding Mr. Brown completely unresponsive did the individual deputies finally contact emergency medical services.  Efforts at resuscitating Mr. Brown failed.  He died on April 27, 2017.

29.     Defendants Darin Householter, Doug Fletcher, Daniel Thompson, and Courtney Soto staffed the Woodford County Jail from 6:00 p.m. to 6:00 a.m. on April

26-27, 2017.  On information and belief, each of these defendants observed Mr.

Brown's condition and would have known that Mr. Brown 1) was critically ill, 2) had

a serious medical need that was not being met by ACH, and 3) needed to be

hospitalized.  Despite this, each of the individual deputies named in this paragraph

ignored Mr. Brown's serious medical needs and failed to arrange for his

transportation to a hospital to receive proper medical attention.

30.     Defendants Shane Amigoni, Joe Soto, Chad Pyles, and Kelsey

Kowalski staffed the Woodford County Jail from 6:00 p.m. to 6:00 a.m. on April 25-

26, 2017.  On information and belief, each of these defendants observed Mr. Brown's

condition and would have known that Mr. Brown 1) was critically ill, 2) had a

serious medical need that was not being met by ACH, and 3) needed to be

hospitalized.  Despite this, each of the individual deputies named in this paragraph

ignored Mr. Brown's serious medical needs and failed to arrange for his

transportation to a hospital to receive proper medical attention.

31.     Defendants Kyle Durst, Jim Elliott, and Robert Plopper staffed the

Woodford County Jail from 6:00 a.m. to 6:00 p.m. on April 25, 2017.  On information

and belief, each of these defendants observed Mr. Brown's condition and would have

known that Mr. Brown 1) was critically ill, 2) had a serious medical need that was

not being met by ACH, and 3) needed to be hospitalized.  Despite this, each of the

individual deputies named in this paragraph ignored Mr. Brown's serious medical

needs and failed to arrange for his transportation to a hospital to receive proper

medical attention.

32.     An autopsy performed on Mr. Brown revealed that he died of eminently preventable causes.  The etiologically specific cause of death was acute pylenophritis due to obstructive uropathy due to BPH.  On autopsy, Mr. Brown's bladder was found to contain approximately 1,500 mL of urine, approximately triple the average male's maximum bladder capacity.  The bladder was markedly distended, and protruded into the abdominal cavity.  Had any of the defendants not been deliberately indifferent to Mr. Brown's serious medical needs, and arranged for him to be transported to hospital, he would have received appropriate medical treatment, and would not have died a preventable death.

33.     As a result of the unjustified and unconstitutional conduct of each of the defendants, Mr. Brown experienced pain, suffering, emotional distress, injury, and ultimately death.  Each of the defendants acted intentionally, with malice, willfulness, and deliberate indifference to the rights of Mr. Brown, and violated Mr. Brown's constitutional rights by willfully ignoring his serious medical needs.

34.     Mr. Brown is survived by plaintiff.  As a direct and proximate result of defendants' unlawful conduct, plaintiff has experienced, and will continue to experience into the future, pecuniary loss, including a loss of society.  As a further direct and proximate result of defendants' unlawful conduct, plaintiff has experienced, and will continue to experience into the future, grief, sorrow, and mental suffering.

35.     The unconstitutional official policies and/or widespread practices maintained by defendants Matt Smith, Woodford County, and ACH, as further

described below, were each moving forces driving the unconstitutional treatment
and ultimate death of Mr. Brown.

36.     As of March or April, 2017, there existed a widespread practice and/or
official policy at Woodford County Jail, maintained with deliberate indifference to
the constitutional rights of inmates, such as Mr. Brown, of not securing immediate
medical attention for inmates who display obvious signs of a serious medical need
that poses an immediate risk to the health or safety of the inmate.  Instead, it was a
widespread practice and/or official policy at Woodford County Jail to defer any and
all decisions regarding inmate medical issues to defendant ACH even though it was
known to defendant Matt Smith and defendant Woodford County that ACH
systematically denies necessary medical care to inmates in order to maximize its
profits, as further alleged below.  More specifically, it was a widespread practice
and/or official policy at Woodford County Jail not to contact emergency medical
services on behalf of an inmate who is experiencing an obvious medical emergency
without the prior approval of ACH, even where such approval was wrongfully
withheld or denied.

37.     The above-referenced widespread unconstitutional practice was
allowed to flourish because defendant Matt Smith as Sheriff, directly encourages
and is thereby the moving force behind the very type of misconduct at issue by
failing to adequately train, supervise, and control his deputies, and by failing to
adequately punish and discipline prior instances of similar misconduct, thus
directly encouraging future abuses such as those affecting Mr. Brown.  For example,

defendant Matt Smith, and defendant Woodford County, ratified the unconstitutional treatment of Mr. Brown by finding that all of the individual deputies acted in accordance with Woodford County policies. In this way, defendant Matt Smith violated Mr. Brown's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

38.     The above-described widespread practice, so well settled as to constitute de facto policy of Woodford County, was able to exist and thrive because governmental policymakers with authority over the same, namely, defendant Matt Smith, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

39.     As of March and April 2017, defendant ACH had established and maintained a policy, de facto policy, or custom of routinely and systematically denying necessary medical treatment to inmates at facilities where it was contracted to provide medical care. This policy, de facto policy, or custom included refusing to summon emergency medical services for inmates like Mr. Brown who are clearly experiencing a medical emergency. It is common at facilities where ACH provides medical services to observe inmates with clear symptoms of serious medical illness, injury, or conditions, who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored by medical personnel. Further, it is common at facilities where ACH provides medical services for ACH to unjustifiably and unconstitutionally withhold access to hospital care where it is required for the inmate's health and wellbeing.

40.     This widespread practice is allowed to flourish because defendant ACH, which directs the provision of health care services at Woodford County Jail, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train and supervise medical personnel and sheriff deputies at Woodford County Jail and other facilities where ACH is contracted to provide medical care, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Mr. Brown.  In this way, ACH violated Mr. Brown's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

41.     The above-described widespread practice, so well settled as to constitute de facto policy at Woodford County Jail, was able to exist and thrive because governmental policymakers with authority over the same, namely, defendant ACH, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

42.     Defendant ACH's policy, de facto policy, or custom of routinely and systematically denying necessary medical treatment to inmates at facilities where it was contracted to provide medical care in order to maximize its profits is so widespread that it has attracted national media attention.  More specifically, a CBS News investigation documented numerous instances of inmates dying from needless, preventable deaths, in facilities that contracted with ACH, as a result of ACH's refusal to provide proper medical care to inmates, and its refusal to permit

13

hospitalization of inmates who are critically ill and are in obvious, desperate need of hospital care.  The actions and inactions of defendant Robin Simpson and defendant Dr. So as alleged herein were in furtherance of ACH's policy, practice, or custom as described above.

43.   Defendants Willis Surratt, Gary Harris, Joseph Hitchins, Terra Shaffer, Darin Householter, Doug Fletcher, Daniel Thompson, Courtney Soto, Kyle Durst, Jim Elliott, Robert Plopper, Shane Amigoni, Joe Soto, Chad Pyles, Kelsey Kowalski, Dr. So, and Robin Simpson are each liable to plaintiff pursuant to 42 U.S.C. § 1983 based on their deliberate indifference to Mr. Brown's serious medical needs, and their failure to intervene.

44.   Defendants Matt Smith, Woodford County, and ACH are liable to plaintiff pursuant to 42 U.S.C. § 1983 and Monell v. Dept. of Soc. Svcs., 436 U.S. 658 (1978), based on their unconstitutional policies, practices, and/or customs as alleged herein which were each a moving force driving the constitutional deprivation suffered by Mr. Brown.

45.   Plaintiff additionally asserts Illinois state-law claims of willful and wanton negligence against defendants Willis Surratt, Gary Harris, Joseph Hitchins, and Terra Shaffer.  Each of these defendants knew from their observation of conditions that Mr. Brown was in need of immediate medical care and, through willful and wanton conduct, failed to take reasonable action to summon emergency medical services or other proper medical care.  Plaintiff asserts the same state-law claims against defendants Matt Smith and Woodford County under the doctrine of

respondeat superior, based on the actions and inactions of each of the individual deputies.  Plaintiff additionally asserts a state-law indemnification claim against defendants Matt Smith and Woodford County pursuant to 745 ILCS 10/9-102.

46.     Plaintiff additionally asserts Illinois state-law medical malpractice claims against defendants Dr. So and Robin Simpson in that they committed medical negligence by failing to cause Mr. Brown to be sent to hospital for emergency medical care, and their failure to do so proximately caused Mr. Brown's death.  Plaintiff asserts the same state-law claims against defendant ACH under the doctrine of respondeat superior.

47.     Plaintiff's state-law claims are brought pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/0.01 et seq., for the pecuniary losses sustained by Mr. Brown's next-of-kin, and the Illinois Survival statute, 755 ILCS 5/27-6, for Mr. Brown's conscious pain and suffering prior to death.

48.     Plaintiff hereby demands trial by jury.

Accordingly, plaintiff requests that appropriate compensatory and punitive damages be awarded against each of the defendants on all federal-law claims, and that appropriate compensatory damages be awarded against each of the defendants on all state-law claims.

By:  /s/ John K. Kennedy
**JOHN K. KENNEDY** (ARDC No.  6309407)
**DANIEL WATKINS, II** (ARDC No. 6317127)
James D. Montgomery and Associates, Ltd.
One North LaSalle Street, Suite 2450
Chicago, IL  60602
(312) 977-0200
docket@jdmlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| DAVID BROWN II, as Independent Administrator of the Estate of DAVID BROWN, deceased, <br>                 Plaintiff, <br><br> v. <br><br> MATT SMITH, the SHERIFF OF WOODFORD COUNTY, individually and in his official capacity; WOODFORD COUNTY, ILLINOIS; WILLIS SURRATT; GARY HARRIS; JOSEPH HITCHINS; TERRA SHAFFER; ADVANCED CORRECTIONAL HEALTHCARE, INC., an Illinois for-profit corporation; JASON SCOTT SO, D.O.; and ROBIN SIMPSON, R.N., <br>                 Defendants. | Case No.  18-cv-01168-JBM-JEH <br><br><br><br><br><br><br><br><br><br><br><br> JURY DEMANDED |

**AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622(a)(1) REGARDING
DEFENDANT JASON SCOTT SO, D.O.**

I, JOHN K. KENNEDY, first being duly sworn, depose and state that I am one of the attorneys responsible for representing plaintiff David Brown II before this Court and, as such, have knowledge of the following:

1.    I have consulted and reviewed the facts of this case with a health professional who is a physician licensed to practice medicine in all its branches.

2.    I reasonably believe that the reviewing health professional:  (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

3.    The reviewing health professional has determined in a written report, after a review of the medical records and other relevant material involved in this particular action, that there is a reasonable and meritorious cause for the filing of this action against defendant Jason Scott So, D.O.

4.      I have concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of this action against defendant Jason Scott So, D.O.

5.      A copy of the reviewing health professional's written report is attached hereto.

**JOHN K. KENNEDY**, Attorney

Signed and sworn to before me
on the 3rd day of May, 2018

NOTARY PUBLIC

OFFICIAL SEAL
DEBRA MARTIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/04/19

John K. Kennedy
One North LaSalle Street, Suite 2450
Chicago, IL 60602

Re:    Death of David Brown

Dear Mr. Kennedy:

I am a physician licensed to practice medicine in all its branches. I am board certified in
Internal Medicine. I am currently practicing in the area of Internal Medicine, and I have practiced in
this area for over 25 years. I am knowledgeable regarding the medical issues involved in this
particular case.

I have reviewed the following materials that you provided, including:
- David Brown Jail Medical File
- David Brown Jail File
- Report of Postmortem Examination for David R. Brown
- Woodford County Sheriff Reports regarding David Brown
- Surveillance video of B Pod
- Surveillance video of Medical Cell A

Based upon my review of the above materials, and my background, training, and experience,
I have concluded that there is reasonable and meritorious cause for filing a medical negligence claim
against Dr. Jason Scott So, D.O., based upon his failure to cause Mr. Brown to be sent to a hospital
for emergency medical care, the need for which would have been apparent to a reasonably well-
qualified physician. The pertinent facts that inform this conclusion include the following:
1.     Mr. Brown died of preventable causes. The etiologically specific disease or injury
that started the lethal chain of events was acute pyelonephritis due to obstructive uropathy due to
benign prostatic hypertrophy. At autopsy, Mr. Brown's bladder was found to contain approximately
1,500 mL of urine. The bladder was markedly distended, and protruded into the abdominal cavity;
2.     In the days leading up to his death, Mr. Brown complained to his medical providers
that he was unable to completely void, was only urinating small amounts, and was unable to self-
catheterize. Mr. Brown additionally complained of 10/10 flank pain, insisted that "something ain't
right," and requested to be taken to a hospital. Mr. Brown's complaints reflect a serious medical
condition. The records indicate that Dr. So was contacted and notified of Mr. Brown's condition;
3.     Surveillance video from April 27, 2017, shows that Mr. Brown was critically ill, his
medical needs were not being met, and he needed emergency medical care. No such care was
provided.

It is further my opinion that Dr. So's failure to cause Mr. Brown to be sent to a hospital for
emergency medical care was a proximate cause of Mr. Brown's death in that Mr. Brown's death
could have been averted had he received prompt, appropriate emergency medical attention.

Reviewing Physician

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

DAVID BROWN II, as Independent
Administrator of the Estate of
DAVID BROWN, deceased,

               Plaintiff,

       v.

MATT SMITH, the SHERIFF OF
WOODFORD COUNTY, individually
and in his official capacity;
WOODFORD COUNTY, ILLINOIS;
WILLIS SURRATT; GARY HARRIS;
JOSEPH HITCHINS; TERRA
SHAFFER; ADVANCED
CORRECTIONAL HEALTHCARE,
INC., an Illinois for-profit
corporation; JASON SCOTT SO,
D.O.; and ROBIN SIMPSON, R.N.,

               Defendants.

Case No.  18-cv-01168-JBM-JEH

JURY DEMANDED

## AFFIDAVIT PURSUANT TO 735 ILCS 5/2-622(a)(1) REGARDING DEFENDANT ROBIN SIMPSON, R.N.

I, JOHN K. KENNEDY, first being duly sworn, depose and state that I am one of the attorneys responsible for representing plaintiff David Brown II before this Court and, as such, have knowledge of the following:

1.     I have consulted and reviewed the facts of this case with a health professional who is a physician licensed to practice medicine in all its branches.

2.     I reasonably believe that the reviewing health professional:  (i) is knowledgeable in the relevant issues involved in this particular action; (ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health or medicine that is at issue in this particular action; and (iii) is qualified by experience or demonstrated competence in the subject of this case.

3.     The reviewing health professional has determined in a written report, after a review of the medical records and other relevant material involved in this particular action, that there is a reasonable and meritorious cause for the filing of this action against defendant Robin Simpson, R.N.

4.     I have concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of this action against defendant Robin Simpson, R.N.

5.     A copy of the reviewing health professional's written report is attached hereto.

**JOHN K. KENNEDY**, Attorney

Signed and sworn to before me
on the 3rd day of May, 2018

NOTARY PUBLIC

OFFICIAL SEAL
DEBRA MARTIN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/04/19

2

John K. Kennedy
James D. Montgomery and Associates, Ltd.
One North LaSalle Street, Suite 2450
Chicago, IL 60602

      RE:  Death of David Brown

Dear Mr. Kennedy:

      I am a physician licensed to practice medicine in all its branches.  I am board certified in
Internal Medicine.  I am currently practicing in the area of Internal Medicine, and I have practiced in
this area for over 25 years.  I am knowledgeable regarding the medical issues involved in this
particular case.

      I have reviewed the following materials that you provided, including:
- David Brown Jail Medical File
- David Brown Jail File
- Report of Postmortem Examination for David R. Brown
- Woodford County Sheriff Reports regarding David Brown
- Surveillance video of B Pod
- Surveillance video of Medical Cell A

      Based upon my review of the above materials, and my background, training, and experience,
I have concluded that there is reasonable and meritorious cause for filing a medical negligence claim
against Nurse Robin Simpson based upon her failure to cause Mr. Brown to be sent to a hospital for
emergency medical care, the need for which would have been apparent to a reasonably well-qualified
nurse.  The pertinent facts that inform my conclusion include the following:

      1.    Mr. Brown died of preventable causes.  The etiologically specific disease or injury
that started the lethal chain of events was acute pyelonephritis due to obstructive uropathy due to
benign prostatic hypertrophy.  At autopsy, Mr. Brown's bladder was found to contain approximately
1,500 mL of urine.  The bladder was markedly distended, and protruded into the abdominal cavity;

      2.    In the days leading up to his death, Mr. Brown complained to Nurse Simpson that he
was unable to completely void, was only urinating small amounts, and was unable to self-catheterize.
Mr. Brown additionally complained of 10/10 flank pain, insisted that "something ain't right," and
requested to be taken to a hospital.  Mr. Brown's complaints reflect a serious medical condition;

      3.    Surveillance video from April 27, 2017, shows that Mr. Brown was critically ill, his
medical needs were not being met, and he needed emergency medical care.  No such care was
provided.

      It is further my opinion that Nurse Simpson's failure to cause Mr. Brown to be sent to a
hospital for emergency medical care was a proximate cause of his death in that his death could have
been averted had he received prompt, appropriate emergency medical attention.

Reviewing Physician